Good morning, Your Honors. Matt Campbell on behalf of Mr. Mock and I'd like to reserve three minutes for rebuttal. Mr. Mock was sentenced as a career offender pre-Booker based on Washington third-degree assault convictions. In resolving this 2255 motion, the district court correctly found that those third-degree assault convictions did not qualify as predicate enhancements. So now the question before us is what is about the Oregon convictions, right? That is correct. And whether they're related or unrelated? That is correct. So the sub issue is what did the district court have in front of it at the time? And it's it is a bit ambiguous but the court does say I've got two different sentence judgments and I don't know much more about it than that. And so those didn't exist in the PSR so it seems to me that they must have been talking about the judgments, the actual judgments. Am I wrong about that? And he says he was gonna think primarily about the PSR but then he says I've got these two judgments in front of me. The court did make that, Your Honors, correct. The court did make that statement about I've got these two separate judgments. Right. But what is not clear from the record is whether he was referring to the fact that there are two separate judgments reflected in the PSR or that he actually physically had in his hands at the time two judgments. What is clear is that the documents that the government submits that I've objected to a move to strike were never admitted as an exhibit. They were never included with anybody's pleadings, either Mr. Mock or the government's pleadings. And ultimately Judge Whaley stated, and I believe it's at ER page 110, that he was relying solely on the PSR. He doesn't ever say solely, he says primarily. Or at least maybe the place I'm looking, he says primarily. I believe that at ER 110 he states, and I'm quoting, I'm limiting myself to the pre-sentence investigation report. So he gets to the written order, he doesn't, he doesn't say that. No, admitted that's a statement made in orally. Right, because he says the court notes, this is the written order, the defendant's organ-controlled substance offense convictions. Thus the court is limiting itself to the record that exists, primarily the PSR. But again, it seems ambiguous. What is the record? Well, that is certainly what the government has argued, is that it's ambiguous and that they sort of speculate that the court must have used these documents. But in pronouncing judgment orally, Judge Whaley, I think the issue then becomes, I believe that's an accurate summation of that statement. But the fact that Ms. Guernsey made that statement did not necessarily mean that the court had those documents or that the court used those documents. I think we would be in the same position, for example, although I think it's frankly dispositive that they were never introduced as an exhibit or never stated this is what's being relied on. If, for example, the government had tendered those and Judge Whaley made the same statement, I am limiting myself to the PSR. I think we're in the same place. Is all this influenced by defense counsels, I think, urging Judge Whaley to rely on the PSR? Well, I don't know that I would characterize it as urging. I would agree that at numerous places defense counsel did cite to the PSR. But, and that's why I went into some detail about the difference between plain error review and invited error. And I candidly admit, I'd be foolish not to, that we're looking at plain error review here. But I think the case law is also abundantly clear that it is, that an erroneous career offender determination is plain error, that it is plain error to rely on a PSR as a shepherd document when it isn't. Why isn't this invited error, though? I mean, I'm looking, I'm having trouble seeing the page numbers on here. I think they've been sort of cut off on my copy and I apologize for not, it's page six of the motion hearing on April 14th. And counsel says, we had communications with the probation office before the hearing where probation obtained all the court records from the two convictions in Marion County, Oregon and provided those to both of us, meaning both counsel, at that time. And I think that the information in the PSR is an accurate reflection, misspelled, but an accurate reflection of what's in those court records. Um, so I guess I have some difficulty now having the argument that, well, we have to assume that those court records don't exist or that there wasn't an affirmative agreement that the PSR would be, as an accurate reflection, the place to go. Your Honor, I, well, I think the answer to that is under the Perez case, the Winn case, and it's, I believe it's Al-Furahin, which I cited. They all talk about the notion that invited error only applies when someone both causes, when a defendant both causes the error and makes an intentional relinquishment or abandonment of known rights. And in this situation. Well, if, if counsel asked that the court rely on the PSR, why isn't that an intentional relinquishment of the right to have the court not rely on the PSR? Because the PSR in Johnson hearings is routinely distributed, uh, as a document to be considered at sentencing. I think we would be in a different place if, um, the government had tendered the conviction documents and, uh, the defense had come in and said, we object to those documents, they're uncertified. Instead, we offer the PSR. That would be causing the error and relinquishing the right to look at the documents. Um, and I think the case law upholds that there has to be some affirmative waiver. This is not a situation where Mr. Mock said, I know we could look at the documents, um, but I affirmatively waive my right to do so. I would like to address one last point and then reserve time. But just before you pass on though, uh, isn't there a reference in the PSR to, uh, Shepard dark documents? Is that right? In other words, aren't the statements in the PSR supported by citation to Shepard dark documents, Shepard type documents? Uh, I'm not exactly sure what your honor is asking. I think it's, I think it's fair to say that it would appear one could infer from the PSR that the person writing it, well, that's what documents, that's what defense counsel said, that both of us got copies of the original documents that the probation office was using in preparing the PSR. That's, I mean, I think she said, I think that I agree with that and I think it's true. But again, we go back to judge Whaley statement. I am limiting my review to the PSR. So if he's reviewed to the PSR, because defense counsel asked him to, does that make a difference? I don't think defense counsel asked him to, I think defense counsel simply argued off the PSR understood the best answer I can give is that I don't think defense counsel asked. I think it was a given that the PSR was going to be consulted and then defense counsel didn't go a step further and object. The failure to object I would argue is plain error under plain error review. I do want to point out one last point. Even if the documents are properly considered, if we look at the documents, there still is insufficient proof of an intervening arrest. Because according to the commentary, an intervening arrest occurs where a defendant is arrested for the first offense prior to the commission of the second offense. And at most, even if we look to the documents that the government cites, the second April conviction merely states that on April 8th, I believe it was, he was engaged in manufacturing methamphetamine. That doesn't state that that offense occurred after he had been arrested previously. It simply states an ongoing offense. And that ongoing offense was otherwise closely related. So even if the government is correct that we can use these documents, they do not prove what the government claims they do. I'll reserve my 11 seconds. Good morning, Your Honors. Russ Smoot for the United States. First, I would like to indicate that as the Court was looking for the sites, the actual record site to defense and I would indicate that the pre-sentence report, while it talks about the kind of underlying facts of the conviction, it does reference the Oregon cause numbers. So if that answers the Court's question. But the PSR is, of course, not a Shepard document. Yes, Your Honor, and that's what I'd like to start with, really what counsel ended with. Here's the problem. I don't think that the, well, here's the issue, Your Honor. This issue is not a Taylor, DeCamps, Mathis type of issue to where Shepard documents are the sole source. And here's why. When we look at these prior conviction cases, whether it's a categorical or a modified categorical approach to these, we have been told that the inquiry is not factual. That it is strictly legal and does this particular offense fit within the crime of violence or whether or not it's any type of other predicate of drug felony. What we're told to look at is the Shepard documents because they are theoretically, and most of the time practically, devoid of the facts that we had previously been using in these analysis. What they say is this is the charge, this is the date, this is the, potentially this is the county, and so on. What that does is that then one looks to the statute, the Washington statute, the Oregon statute, there is no dispute as to the fact that the prior convictions are predicates. That was not disputed. What was disputed is whether or not the two prior convictions, there were two prior convictions, were counted as related or unrelated. And I would submit that that's a factual inquiry. And here's that the Shepard documents, as defendant urges the court to adopt the Shepard documents under this circumstance, the Shepard documents are generally insufficient to address the factual inquiry. For example, the Shepard documents can tell you that an offense was not committed on a certain, was committed on different dates. Shepard documents can't tell you that necessarily that there was an intervening arrest. Maybe it can, but not necessarily. It can't tell you, it can't tell us the factual inquiry in terms of necessarily whether there was the same victims. It doesn't necessarily say whether they were, the defendant was arrested by the same officer. It doesn't say whether it's a single investigation. It may give us an indication of similarity. In fact, in this case, the defendant was guilty of methamphetamine charges in both documents. But in looking at the Chapnick case that really set out this criteria, the defendant was charged with two different... You're now moving from the intervening arrest criterion to the alternative no common scheme criterion. I am, Your Honor, and I'm sorry, I'm just kind of... No, no, that's fine. I just, because opposing counsel talked only about intervening arrest, but the court made the alternative analysis under the no common scheme scenario or theory. And I wasn't very clear, Your Honor, but what I was, I guess my point was more general, that the Shepard documents wouldn't necessarily be the ultimate or the limited documents for the court to consider because it's a factual inquiry. In this case, again, going back to that, while the Shepard documents can tell us some things, they can't go into this factual inquiry is up to the court's discretion in reviewing the facts. The Shepard documents could say this offense happened on this date and the second offense happened on this date, but ultimately a district court has the discretion to determine whether four weeks between offenses is enough or two weeks is not enough. And that's why we have different opinions based on the totality of the facts, and there's a deferential review to the district court. So in terms of that . . . . . . suggesting that the district court had to, in fact, if you would, see the Shepard documents. They weren't part of the record in the case, at least as far as we know. Is that correct? I'm not going to say that the record isn't free of ambiguity, but my review of the record . . . Well, there either were . . . there's something, hopefully, that says that this exhibit was admitted or not admitted or not offered. I would submit that what we have is the district court's statement indicating that it has the facts and the judgments do not reference each other. So based on the record, and I have the cite here . . . But they were not admitted as exhibits. They were not part of the record. No, and I don't know that they need to be . . . I would submit that they don't need to be admitted as a part of the record on the factual inquiry of whether the two convictions were related or not related. Well, that suggests that it doesn't matter to the outcome in your view whether we grant or deny the motion to add these materials to the record. I . . . yes, Your Honor. In reviewing the supplemental brief and the records that were added . . . Is the motion to strike your supplemental . . . I got the motion backwards, but your question was whether those are stricken or not stricken. No, and here's why. No what? Do you agree that it doesn't matter? It was kind of a double negative. And I didn't answer that correctly. No, I agree that it doesn't matter. Okay. And I agree that it doesn't matter for two reasons. Again, which I already indicated this is a factual inquiry. Second, as the court indicated, defense counsel clearly indicated on page . . . in the record that the parties had reviewed, had had copies of these, and that the PSR, on this factual inquiry, the PSR accurately reflects what's in those documents. Those documents, in looking at them on their face, are insufficient to answer the factual inquiry of whether the cases are related or not related. I think I agree with you now, but let me back up. Now you said Judge Whaley's statement supports his conclusion. You were about to give us a record citation, but you never got there. Do you remember that? What is that citation? If I could ask, Your Honor, exactly which statement, I kind of lost it myself. In other words, his statement that, you know, this was not a single conviction, or his conclusion, right? He concluded it was not a single conviction. Isn't that right? Yes. And then I think you said he made some statement to support that. What I'm getting at is, what evidence did he depend on, or did he cite to, in reaching that conclusion? And where is that evidence in the record? On ER-110. His statement, ER-110? ER-110 indicates the discussion is, Judge Whaley indicates, I don't have any record of that in terms of what was discussion about how the courts in Oregon knew or treated the I have just two different sentencing judgments, and I don't know much more about it than that. I don't know exactly what the investigative agencies made the arrest, what investigative agencies made the arrest, and I don't know anything about that. I don't know enough from the records. I don't know whether the courts have supposed to have evidentiary hearings on these issues or not, or whether they're limited to the pre-sentence investigative report, and that's where the court says, I'm limiting myself to the pre-sentence investigation report. As the court pointed out, when the court ultimately issued its order, it indicated that it was, it used the term, the record that exists, primarily the pre-sentence report, and I would submit that the court's comment of having the sentencing judgments, knowing that the sentencing judgments, counsel, here's my problem now. To me, that doesn't seem to there aren't two convictions, or that's right, there are not two convictions. That the two convictions are not related. I mean, there's only one conviction, right? There's, well, yes, or they're related or unrelated, and the court found that they were not related for purposes of the Right, so his finding that they're not related is what supports the career offender application, right? Yes. All right, so what's in the record to support they're not related in terms of what the guidelines require? The PSR is the answer, right? Right, well, the PSR indicates that on page 14 of the PSR, it provides the fact, it provides the dates of the offenses. The PSR is not a Shepard document, though. I agree, but I submit that in this type of inquiry, that it goes beyond the Shepard documents, and the court can consider anything that is reliable. In fact, the specific What was the basis? What was the factual basis for the finding that they were separate? He was in custody on the one case when he was arrested on the other case. Right. The court's exact findings in the order are set forth at page 96 of the excerpt of records. Page what? Page 96. Okay, go ahead. And it said, and the court's finding was that the controlled substance were roughly a month apart, are the offenses. That's in the, if the court had the actual judgments and reviewed those, it would have been in the judgments. It also would have been in the PSR, the dates of the offenses. The court found that, cited a case indicating that two weeks apart was sufficient to be separate offenses. Obviously, there's other courts, other decisions cited by the defendant that are much longer than that, that indicated that they were related. That's a matter of discretion. Secondly, the offenses involved different victims. That is, the defendants argued that the victim was the people of the county in general. The court found in the PS, could have looked at the PSR and indicated that in paragraphs 84 and compared to 88, there are different victims. The meth labs were in different locations. The court simply expanded the term of victims beyond the citizens of Marion County. Counsel, you've well exceeded your time, and I think if Judge Ticino has maybe more questions. It's your position that, based on your argument that this goes beyond the ordinary conclusions drawn under the guidelines, because we have to make these factual determinations like, was there a common scheme? Was there an arrest, and when was there an arrest? Because of all those things, the court has to find that the shepherd prohibition, or the failure to include the PSR as a shepherd document, doesn't apply to this kind of determination. You understand what I'm getting at? I believe so, Your Honor, and it is, if I don't answer this as the court's asking, it's my position, our position here, that because this is a factual inquiry into circumstances related to the underlying convictions, rather than just the very existence of an underlying conviction. That the shepherd prohibition of how many documents can be used works with the fact of the conviction, but it is not sufficient to address the factual circumstances of the conviction, and therefore the court, like any sentencing decision, is anything that's reliable and available is open for the court's consideration. And in this case, the defendant himself, through counsel, indicated that the PSR was reliable. Thank you, counsel. Mr. Campbell? Very quickly, in regard to counsel's argument that the rule of shepherd documents doesn't apply, I would cite the United States v. Dantzler, 771 F. 3rd, 137, decision of this court in 2014, that clearly stated that whether or not offenses occurred on separate occasions can only be determined based on shepherd documents. So I think that case binds us. But aren't there some other things that can never be determined by shepherd documents? For example, the fact of an intervening arrest, because shepherd documents are not arrest records. They don't count as shepherd documents either. So if a court were to decide that it wanted to consider applying this guideline without going to the relatedness test but looked at intervening arrest, under your theory, no court could ever use an intervening arrest because shepherd documents would never tell you the answer. So why isn't it that for at least some of these things, you have to look beyond the shepherd documents? Well, I think that this court in a number of decisions has expanded what are shepherd documents. And I can't think of the name of the cases off the top of my head, but I remember a relatively recent decision where a court minute order, for example, was determined to be a shepherd doc. Right, but that's because it is similar to the kinds of documents. But all right, let's go to the one about different victims and different circumstances and different arresting officers. There's a lot of information that it seems to me, as opposing counsel has argued, may never be in any shepherd document. And it makes it very difficult for a court, if not impossible, to decide whether or not these criteria are met. I understand the inquiry, and I think my response would be there are a court document such as an affidavit of an arresting officer. That could be considered a shepherd document. A court document such as a judgment could certainly be shown to be a shepherd document. There are a number of court documents that could reflect when someone was arrested, when they made an initial appearance, when they were released. How realistic is that? I mean, basically the point of shepherd, in many ways, seems to be to reduce the litigiousness of these issues by relying on things that are unassailable. And what you're describing is like a hearing with a whole bunch of other stuff coming in that is way more complicated than having a defendant say, you know, I've looked at all the underlying documents and the PSR is right. And we do have a case, at least one, from our court saying that if a defendant doesn't object to the PSR, then the facts may be relied upon by the court. I know I was in a different context, but it just seems highly unrealistic what you're saying. I think it's difficult to formulate exactly what might be considered a shepherd document in a random case. But I think what we have here is reliance on a PSR, which case law from this court states is not a shepherd document. That's right. Yes, but we have to figure out whether it was plain error for the court to do so in this unusual context. Understood. But, again, I would point the court to the Dantzler decision, which seems to say we are required to use only shepherd documents. But Dantzler said that in what context? What was the decision that was at issue there? Dantzler was an ACCA case. And the issue was. And it's not from this circuit either, is it? It's a Ninth Circuit decision. Is it? Yes. Dantzler was an ACCA case, and the issue was whether convictions had occurred on separate occasions. And the Dantzler court squarely said one has to look only to shepherd documents to make that decision. So. I'm sorry, it's from the Eastern District of New York. Dantzler is a Second Circuit case. I apologize, Your Honor. Written by Judge Cabranes. And it may be right, but it isn't our case. Your Honor, I sincerely apologize. I was not trying to mislead. I had written it down as a Ninth Circuit decision. I apologize. You are 100 percent correct. It is a Second Circuit decision. I apologize. No, I mean, it still may be right, but it's not binding on us, which is a different question. I agree. I agree completely. And, again, I sincerely apologize. That was not my intent. But I think its reasoning is persuasive. I did just briefly want to reflect on the fact that, again, the government cited to ER page 110. And I think the ultimate statement on that page is simply Judge Whaley's statement that he's limiting himself to the PSR. Thank you, counsel. The case just argued is submitted. And we very much appreciate the arguments from both of you. Obviously, this is a very challenging case. And your comments have been quite helpful.
judges: Tashima, Graber, Mihm